IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA J. BOWYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 08-1496 |
| | ) |
| DISH NETWORK, LLC and | ) |
| ECHOSPHERE, LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is a motion for partial summary judgment (Doc. No. 29) filed by Defendant DISH Network LLC ("DISH"), arguing that Plaintiff's claim for damages based on a willful violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), must be dismissed because she cannot establish that DISH intentionally violated the FMLA or that it recklessly disregarded its obligations under the law.  For the reasons discussed below, Defendant's motion is denied without prejudice.

I.   **INTRODUCTION**

A.   Factual Background[1]

Defendant DISH is a corporation which provides satellite

---

[1] As required when considering a motion for summary judgment, the facts in this section are construed in favor of the non-moving party, Ms. Bowyer.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

television service to residential and commercial customers.   The
company employs more than 500 individuals and is an industry
affecting interstate commerce.[2]   Plaintiff Pamela Bowyer was
employed by DISH as a customer service representative, beginning on
July 22, 2002.   On December 23, 2002, she resigned, but was re-
hired in the same capacity on April 10, 2006.   In total, her
period of employment with DISH was 52 or 53 weeks.

Ms. Bowyer worked her regular work day on October 31, 2006,
and was not scheduled to work again until Friday, November 3.   That
day, she called her office, stating she would not be able to work
because she was experiencing chest pains and needed to see a doctor
as soon as possible.   Contrary to DISH policy, she did not call on
November 4 or 5 (when she was also scheduled to work) to advise her
employer that she would not be in.   By Monday, November 6, her
condition had worsened and she was admitted to the hospital for
observation.   She called her supervisor (or "coach" in DISH
parlance), Hassanali Aliabadi, and told him she was hospitalized
and did not know when she would be released.

After receiving Ms. Bowyer's telephone call, Mr. Aliabadi
contacted the DISH Human Resources office and asked them to begin
the process of terminating Ms. Bowyer's employment.   The ORACLE

---

[2]   DISH Network L.L.C. is the proper legal name for Plaintiff's
employer.   (Doc. No. 5.)   Although the caption in this case has not
been amended, for convenience, the Court will refer to Defendant as
"DISH."   Defendant does not dispute that it is an employer subject to
the provisions of the FMLA.

computer database which contained employee information indicated that her starting date with DISH was April 10, 2006, which was approximately six months prior to her last working day. Based on that information, the DISH management employees who approved her termination concluded she was not eligible for FMLA leave because she had not been employed at least one year.[3]  Consequently, DISH did not provide her with the FMLA documents necessary to request medical leave.

On November 10, 2006, while still in the hospital, Ms. Bowyer received a letter stating that her employment had been terminated effective October 31, 2006, because she was physically unable to perform her work duties.  DISH issued a final paycheck to Ms. Bowyer on November 9, 2006, for the period ending November 3, 2006. That paycheck included a deduction for Ms. Bowyer's health insurance premium for the month of November.  However, Defendant later contacted Ms. Bowyer, advising her that her medical insurance premium would be refunded, meaning she had no coverage for the period she was hospitalized.  Although the hospital had initially

---

[3]  29 U.S.C. § 2612(a)(1) provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period. . .[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  It is the plaintiff's burden to demonstrate that he was entitled to benefits under the FMLA which the employer denied. Bearley v. Friendly Ice Cream Corp., 322 F. Supp.2d 563, 570-571 (M.D. Pa. 2004).  An eligible employee is one who has been employed by the employer for at least 12 months and has worked at least 1,250 hours during the 12-month period immediately preceding the beginning of the leave.  Fifty-two weeks is deemed to be equal to 12 months.  29 C.F.R. § 825.110.

accepted her employer's medical insurance, it later informed Ms. Bowyer that she owed more than $11,000 for the period November 6 through 10, 2006.

B.    Procedural Background

Ms. Bowyer filed suit in this Court on October 23, 2008, claiming that DISH had negligently, recklessly, intentionally and/or willfully discriminated against her by denying her FMLA coverage for the period during which she was suffering from a serious health condition and receiving treatment from a healthcare provider.    DISH further violated the FMLA by terminating her employment and refusing to consider her for alternative positions or rehire when she was able to return to work.    As damages, Ms. Bowyer sought back pay, front pay, overtime and lost fringe benefits of employment, along with compensatory, liquidated, double and punitive damages to the extent allowed by law, attorney's fees, costs and expenses, pre- and post-judgment interest, and delay damages.

On October 2, 2009, following unsuccessful attempts to resolve this matter through  mediation, Defendant stipulated that although the plain language of the FMLA did not require non-consecutive periods of employment to be aggregated when determining whether an individual is eligible for FMLA leave, regulations issued by the Department of Labor in January 2009 require that multiple intermittent periods of employment must be considered in

4

determining the employee's length of service as long as the break in employment between periods does not exceed seven years. (Stipulation, Doc. No. 20, ¶¶ 12-13, *citing* 29 C.F.R. §825.110(b)(1); *see also* Reply Brief in Support of Defendant's Partial Motion for Summary Judgment, Doc. No. 69, "Def.'s Reply," at 3-4.) DISH agreed that its failure to combine the two periods of employment contravened the Department of Labor's interpretation of the FMLA; DISH further agreed that this stipulation obviated the need for a trial as to liability for the violation and that the only remaining questions pertained to the issue of damages. (Stipulation, ¶¶ 15-16.) These questions are to be decided in a bench trial currently scheduled for later this month.

On December 30, 2009, Defendant filed a motion for partial summary judgment, arguing that Plaintiff "cannot establish that DISH intentionally violated the FMLA or that it recklessly disregarded its obligations under the law" and that it is therefore entitled to summary judgment in its favor on Ms. Bowyer's claim for liquidated damages based on a willful violation. (Doc. No. 29, ¶ 2.)

## II.  JURISDICTION AND VENUE

The parties agree that this Court has subject matter jurisdiction under the FMLA pursuant to 28 U.S.C. § 1331 and that venue is properly laid in the Western District of Pennsylvania inasmuch as the alleged violations occurred within this district.

## III.  STANDARD FOR SUMMARY JUDGMENT

A court may grant summary judgment if the party so moving can show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Sollon v. Ohio Cas. Ins. Co., 396 F. Supp.2d 560, 568 (W.D. Pa. 2005). If a reasonable jury could return a verdict for the non-movant, the dispute is genuine and if, under substantive law, the dispute would affect the outcome of the suit, it is material. A factual dispute between the parties that is both genuine and material will defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).

In considering a motion for summary judgment, the court must view all evidence in the light most favorable to the non-movant, accept the non-movant's version of the facts as true, and draw all reasonable inferences and resolve any conflicts in its favor. Sollon, id., citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). In short, the movant must show that if the pleadings, depositions and other evidentiary material were admissible at trial, the other party could not carry its burden of proof based on that evidence and a reasonable jury would thus decide all genuine material disputes in the movant's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 318 (1986).

6

Once the movant has demonstrated that there are no genuine issues of material fact, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." Celotex, id. at 322-323; Sollon, id.; Fed.R.Civ.P. 56(e).   The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor, and it cannot simply reiterate unsupported assertions, conclusory allegations, or mere suspicious beliefs.   Liberty Lobby, id. at 250-252; Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

## IV.   ANALYSIS

### A.   The Parties' Arguments

DISH claims that based on Ms. Bowyer's representation to her supervisor on November 6, 2006, that she did not know when she could return to work, Mr. Aliabadi initiated the termination process.   First, her Coach, a Manager, and a General Manager or the Director, had to approve the termination paperwork.   Their review reflected she had been hired on April 10, 2006, and thus had only been employed slightly more than six months as of October 31, 2006. Based on this information, these DISH employees had no reason to believe she was eligible for FMLA leave.   The paperwork was then transmitted to a Human Resources representative who confirmed through the ORACLE database that she had worked for the company a

total of 11 months prior to her termination; this also led to the conclusion she was not eligible for FMLA leave.   The Human Resources representative then issued a termination letter which did not discuss FMLA leave.   (Memorandum of Law in Support of Defendant's Partial Motion for Summary Judgment, Doc. No. 30, "Def.'s Memo," at 2.)

DISH argues that Ms. Bowyer cannot show that DISH willfully violated the FMLA in terminating her employment.   That is, Plaintiff failed to show that her employer knew or showed reckless disregard for the question of whether its conduct was prohibited by law.   Where the plaintiff has failed to come forward with such evidence, summary judgment is appropriate.   (Def.'s Memo at 4, citing, inter alia, McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988);[4] Smith v. SEPTA, CA No. 08-2927, 2009 U.S. Dist. LEXIS 41265 (E.D. Pa. May 15, 2009); Seifert v. Commonwealth of Pennsylvania Human Reals. Common, 515 F. Supp.2d 601 (W.D. Pa. 2007); and Rigel v. Wilks, CA No. 03-971, 2006 U.S. Dist. LEXIS

_____

[4]   As is common in cases involving the FMLA, the parties cite to cases brought under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq. ("FLSA.")   The FMLA is modeled on the FLSA and the two acts share many of the same provisions and similar language, for example, the usual two-year statute of limitations except in cases of a willful violation where a three-year limitations period applies (compare 29 U.S.C. § 2617(c) with 29 U.S.C. § 255(a)) and the provisions regarding liquidated damages discussed at length below. See Thorson v. Gemini Inc., 96 F. Supp.2d 882, 890 (N.D. Iowa 1999) ("The remedies provisions of the Family and Medical Leave Act were intended by Congress to mirror those of the Fair Labor Standards Act. It is therefore appropriate to rely on cases interpreting the liquidated damages remedy of the FLSA when interpreting the FMLA.")

93659 (M.D. Pa. Dec. 28, 2006).)

DISH also argues it had "a good faith belief that it was complying with the law" inasmuch as the FMLA itself is silent on the question of consolidating periods of employment when determining eligibility and that regulations which resolve that ambiguity in favor of consolidation were enacted more than two years after Plaintiff's termination. (Def.'s Memo at 5.) Since the company erroneously, but in good faith, determined that she had only worked for a period of six months, DISH believed it was complying with the law when it terminated Ms. Bowyer's employment without offering her FMLA leave. (Id.) Moreover, DISH has a system in place to ensure that it complies with applicable employment law, e.g., a system of checks and balances in the form of the requirement that four persons sign off on the termination paper work, approval by a Human Resources representative, and use of the ORACLE database which records relevant employment history. These practices do not evidence an intent to violate the law. (Def.'s Memo at 5-6.) Because Ms. Bowyer failed to establish an intentional violation or reckless disregard of its obligations by DISH, summary judgment should be granted in its favor. (Id. at 6.)

Plaintiff agrees that an employer "willfully" violates the FMLA if it knew or showed reckless disregard for whether its conduct was prohibited by the FMLA. (Plaintiff's Response to Defendant's Partial Motion for Summary Judgment, Doc. No. 46,

"Plf.'s Resp.," at 5-7.)   However, the standard for determining whether an employer willfully violated the FMLA is different from the standard for determining whether the employer may avoid liability for liquidated damages.   The concept of "willfulness" appears only in the provision concerning the limitations period for bringing suit under the FMLA.   *See* 29 U.S.C. § 2617(c).[5]   On the other hand, the provision regarding liquidated damages provides that an employer who violates the statute, for instance, by refusing to grant FMLA leave to an eligible employee,

> shall be liable. . .for damages equal to (i) the amount
> of (I) any wages, salary, employment benefits, or other
> compensation denied or lost to such employee by reason of
> the violation;. . . .(ii) the interest on the amount
> described in clause (i) calculated at the prevailing
> rate; and (iii) an additional amount as liquidated
> damages equal to the sum of the amount described in
> clause (i) and the interest described in clause (ii).

29 U.S.C. § 2617(a)(1).   Civil action by employees.   Liability.

The statute goes on to provide that if the violating employer

> proves to the satisfaction of the court that the act or
> omission which violated section 105 [29 UCS § 2615] was
> in good faith and that the employer had reasonable

---

[5]   "(1) In general.  Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.  (2) Willful violation. In the case of such action brought for a willful violation of section 105 [29 UCS § 2615], such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought."  29 U.S.C. § 2617(c).  In relevant part, § 2615 provides that "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this [Act]" or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this [Act]."

grounds for believing that the act or omission was not a
violation of section 105 [29 UCS § 2615], such court may,
in the discretion of the court, reduce the amount of the
liability to the amount and interest determined under
clauses (i) and (ii), respectively[.]

29 U.S.C. § 2617(a)(1)(A)(iii).

Thus, Ms. Bowyer argues, she does not need to show that the
act or omission which violated the Act was willful, but rather the
burden is on DISH to "prove to the satisfaction of the court" that
its actions were "in good faith" and that it had "reasonable
grounds" to believe it was complying with the FMLA.

Plaintiff argues there are three reasons DISH cannot show it
was acting in good faith with regard to her termination.  First,
while she was still in the hospital, DISH sent a letter stating,
"This letter is to inform you that the reason you are no longer
with EchoStar Satellite L.L.C. is Physically unable to do job,
effective 10/31/2006 [sic]."    (Plf.'s Resp. at 7; see also
Plaintiff's Appendix to Concise Statement of Material Facts, Doc.
No. 48, Exhibit 4, Letter dated November 10, 2006.)   Plaintiff
argues this statement amounts to a concession by DISH that it
terminated her employment because she took medical leave and,
moreover, DISH has never come forward with any other reason for its
actions.

Second, after her termination, DISH "attempted to shirk" its
responsibility to provide her with health insurance during her
medical leave.  In particular, when the hospital bills were first

11

presented, DISH claimed she had not paid her portion of the premium for November 2006. Then, when Ms. Bowyer sent a copy of her final paycheck dated November 9, 2006, which showed that in fact, pre-tax deductions had been made for her medical, dental and vision health coverage, DISH refunded that amount to her. (Plf.'s Resp. at 7, *see also* Doc. 48, Exhibits 3 and 5.)

Finally, Ms. Bowyer's counsel attempted to resolve this matter without litigation by advising DISH on June 30, 2008, that the employer had violated FMLA by failing to consider her entire employment period. Despite this letter, DISH refused to acknowledge that it had violated FMLA regulations until almost a year after Ms. Bowyer filed suit. These actions reflect that the FMLA violation was "more than the result of bookkeeping errors and a misinterpretation of the FMLA." (Plf.'s Brief at 8-9.)

B.   Discussion

We begin with Defendant's argument that liquidated damages may only be awarded when the plaintiff has shown that the employer knew, or showed reckless disregard for the question of whether, its conduct was prohibited by statute. We agree with Plaintiff that in its initial brief in support of the motion, DISH failed to identify the correct standard for granting summary judgment on this question. The cases cited by Defendant, Smith, Seifert and Rigel, all address the question of whether the plaintiff's claims were time-barred under the FMLA provision which

12

requires suit to be brought within two years of the alleged
violation unless the plaintiff can show that the violation was
willful. *See* <u>Smith</u>, 2009 U.S. Dist. LEXIS 41265 at *8, <u>Seifert</u>,
515 F. Supp.2d at 616, and <u>Rigel</u>, 2006 U.S. Dist. LEXIS 93659 at
*58.  That issue is not at question here since Plaintiff brought
suit within the two-year limitations period.

     We also agree with Plaintiff that a showing of willfulness is
not necessary for the award of liquidated damages. *See* <u>Martin v.</u>
<u>Cooper Elec. Supply Co.</u>, 940 F.2d 896, 907 (3d Cir. 1991) ("the
employee need not establish an intentional violation of the Act to
recover  liquidated  damages.")[6]    The  defendant  made  the  same
erroneous  argument  as  DISH  in  <u>Persky v. Cendant Corp.</u>, 547 F.
Supp.2d 152, 164 (D. Conn. 2008), where the court pointed out that
such an argument "ignores the [FMLA's] presumption that liquidated
damages  should  be  awarded  as  a  matter  of  course,  subject  to  the

---

[6]  Both <u>Martin</u> and <u>Williams v. Tri-County Growers, Inc.</u>, 747 F.2d
121, 129 (3d Cir. 1984), which the <u>Martin</u> Court relied upon
extensively, were cases involving violation of the FLSA.  Similar to
the liquidated damages provision of the FMLA, the FLSA provides: "Any
employer who violates the provisions of . . . section 207 . . . shall
be liable to the employee or employees affected in the amount of . . .
their unpaid overtime compensation, . . . and in an additional equal
amount as liquidated damages."  29 U.S.C. § 216(b).  There is also a
"safe harbor" exception in the FLSA, that is, "In any action . . . to
recover . . . unpaid overtime compensation, or liquidated damages,
under the [FLSA] . . . if the employer shows . . . the act or omission
giving rise to such action was in good faith and that he had
reasonable grounds for believing that his act or omission was not a
violation of the [FLSA] . . . the court  may, in its sound discretion,
award no liquidated damages or award any amount thereof not to exceed
the amount specified in [29 U.S.C. 216]."  29 U.S.C. § 260.  *See*
<u>Martin</u>, 940 F.2d at 907.

narrow exception in 28 U.S.C. 2617 (a)(1)(A)(iii)."  While "lack of good faith may be easier to prove where an employer acted willfully, 'that an employer did not purposefully violate the provisions of the statute is not sufficient to establish that it acted in good faith.'"  Id., quoting Reich v. Southern New Eng. Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1979) (internal alterations omitted.)  In the absence of evidence of good faith and reasonableness, courts consider the award of liquidated damages to be required under the FMLA.  See, e.g., Cooper v. Fulton County, 458 F.3d 1282, 1287 (11th Cir. 2006) ("Liquidated damages are awarded presumptively to an employee when an employer violates the FMLA"); Thorson v. Gemini, Inc., 205 F.3d 370, 383 (8th Cir. 2000) (referring to the "mandatory call for liquidated damages"); and Reich, 121 F.3d at 71 ("double damages are the norm, single damages the exception.")  Even if the defendant does come forward with evidence of good faith and reasonableness, the court may, in its discretion, still allow liquidated damages.  Shea v. Galaxie Lumber & Constr. Co., 152 F.3d 729, 733 (7th Cir. 1998) ("[T]hat discretion must be exercised consistently with the strong presumption under the statute in favor of doubling.")

Once this error was pointed out, Defendant filed a reply brief in which it concedes that whether or not there was a willful violation has no impact on damages, the only issue remaining in this case. (Def.'s Reply at 1, n.1.)  DISH identifies in its Reply

14

Brief a number of facts which, it argues, establish that its actions were reasonable and were taken in good faith, specifically:

- the company has an FMLA policy[7] with which it complies and which it communicates to its employees;

- its supervisory and management employees and Human Resources professionals are trained in the FMLA;

- it has approved numerous FMLA leave requests in the past three years;

- Ms. Bowyer's claims arose more than two years before the FMLA regulation about combining non-consecutive periods of employment was clarified;

- DISH policy required that the decision to terminate an employee required the signatures of four supervisory employees, including that of a Human Resources professional;

- DISH's Human Resources manager at the time, Ray Bermudez, personally inquired into whether Ms. Bowyer was eligible for FMLA leave and determined that she had worked for DISH approximately six months in 2006; and

- based on this information, Mr. Bermudez concluded she was not eligible for leave.[8]

These examples of the company's purported good faith might be more persuasive if the evidence supported Defendant's statements about the process which was observed in connection with Ms. Bowyer's termination.   DISH has provided the "Termination/

---

[7] This policy is identified as Exhibit A to the affidavits of Messrs. Moon and Bermudez filed in support of the Reply Brief, but is not provided.

[8] Defendant also argues that Ms. Bowyer was never employed by DISH for 12 consecutive months; there was more than a three-year gap between her two employment periods; and she was employed, at most, for 53 weeks total.  Even if they are supported by the evidence, these facts do not reflect Defendant's good faith or reasonableness.

Employment Survey" which recorded the process in Ms. Bowyer's case. (*See* Appendix to Motion for Summary Judgment, Doc. No. 32, "Def.'s App.," Exh. B., Aliabadi Deposition Exh. 3.)   Contrary to the statement that four employees signed off on the termination, the form reflects (and only requires) three signatures – the supervisor, the manager, and the Human Resources representative.[9] On the other hand, an "Employee Worksheet," also completed at the time Ms. Bowyer was terminated, contains the signatures of her supervisor, Mr. Aliabadi; a manager, Kelly Fitterer; Jennifer Dietrick from Human Resources; and an illegible signature on the line for the Director.   (Def.'s App., Aliabadi Deposition Exh. 2.)

Second, the Human Resources representative who signed off on the forms was Ms. Dietrick, not Ray Bermudez, the Human Resources manager at the time Ms. Bowyer was employed by DISH.   The Court is not persuaded by Mr. Bermudez's affidavit provided with Defendant's Reply Brief.   Mr. Bermudez states that "DISH has sought the advice of counsel in dealing with difficult or confusing human resources issues," but makes no claim that it did so in connection with these events.   He also states he was "familiar with the requirements under the FMLA" but does not establish his professional credentials

---

[9]     The Court does note that at least one other employment form, entitled "Eligible/Not Eligible for Rehire Justification," requires the signatures of the supervisor, a manager or general manager, a director and a representative of the Human Resources office.   *See* Def.'s App., Bowyer Deposition Exh. A, dated December 28, 2002.   We further note that a comparable form for Ms. Bowyer's termination in 2006 does not appear in the record.

16

showing, for instance, training in any FMLA policies per se.  He states he personally inquired into Ms. Bowyer's status when her employment was terminated and, based on the fact that she had been employed for only six months in 2006, "concluded that she did not meet the 12 month employment requirement for FMLA eligibility." But we have been unable to find any evidence in the record which indicates, for instance, that Mr. Bermudez and Ms. Dietrick, the Human Resources representative who actually signed off on Ms. Bowyer's termination paperwork, discussed the possibility of granting Ms. Bowyer a leave or even that Mr. Bermudez communicated the results of his inquiry to Ms. Dietrick or anyone else in DISH management.

The exception to the general rule awarding mandatory liquidated damages requires the employer to come forth with evidence of both "good faith" and reasonableness in its actions. To satisfy the subjective good faith requirement, the employer must establish "an honest intention to ascertain and follow the dictates of the [statute]."  *See* Hultgren v. County of Lancaster, 913 F.2d 498, 509 (8th Cir. 1990); Marshall v. Brunner, 668 F.2d 748, 753 (3rd Cir. 1982).  That is, "a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions."  Martin, 940 F.2d at 908. Good faith requires "some duty to investigate potential liability." McGuire v. Hillsborough County, 511 F. Supp.2d 1211, 1214 (M.D.

Fla. 2007) (internal quotation omitted); <u>Keeley v. Loomis Fargo & Co.</u>, 183 F.3d 257, 270 (3rd Cir. 1999) ("reasonable good faith is not shown when an employer does not inquire about the law's requirements.")   Thus, the facts that DISH had an FMLA policy, communicated it to its employees, and has granted other employees FMLA leave is not persuasive evidence of good faith in the absence of some evidence of the inquiry DISH undertook to ascertain specifically in connection with Ms. Bowyer's situation.   Mr. Bermudez may have stated that he was "familiar" with FMLA requirements,[10] but this does not establish any expertise in the intricacies of the law and he did not, apparently, go beyond the ORACLE database review to determine if Ms. Bowyer might be eligible for FMLA leave.

We also find Defendant's argument that its employees were unaware of the relevant regulations to be indicative of a lack of reasonableness and good faith.   Although DISH states in its Reply Brief that the regulations were not clarified until January 2009, independent research by the Court has revealed several much earlier cases on this subject.   For instance, in 1998, a court quoted the 1995 version of the same regulation:

> *The 12 months an employee must have been employed by the employer need not be consecutive months.*   If an employee is maintained on the payroll for any part of a week,

---

[10]   A similar statement by Jonathan Moon, the current DISH Human Resources Manager, is irrelevant since there is no evidence he played any role in the events surrounding Ms. Bowyer's termination in 2006.

including any periods of paid or unpaid leave (sick, vacation) during which other benefits or compensation are provided by the employer (e.g. worker's compensation, group health plan benefits, etc.), the week counts as a week of employment. For purposes of determining whether intermittent/casual employment qualifies as "at least twelve months," 52 weeks is deemed to be equal to 12 months.    29 C.F.R. § 825.110(b), 60 Fed. Reg. 2180 (1995)(emphasis added).

Mitchell v. Continental Plastic Containers, Inc., CA No. 97-412, 1998 U.S. Dist. LEXIS 21465, *31-*32  (S.D. Ohio Mar. 3, 1998).

In Mitchell, the plaintiff had worked from September 1974 until March 1993, when he voluntarily resigned, and then again from April 11, 1995, until December 18, 1995, for a total of more than 20 years.  The defendant argued, as did DISH initially, that the two periods did not have to be combined to determine eligibility for FMLA leave.  The court, however, held that the plaintiff was in fact an eligible employee, noting that "nothing in the regulations or the statute itself. . .precludes plaintiff from relying on his cumulative employment when determining FMLA eligibility." Furthermore, the court noted that "the plain language [of this section] fails to support defendant's argument that plaintiff is ineligible because his twelve months of employment includes employment prior to his resignation in 1993."  Id. at *33-*34.

Other cases have arrived at the same conclusion, based on the same provision of the regulations.  See, e.g., Lange v. Showbiz Pizza Time, 12 F. Supp.2d 1150, 1153, n.1 (D. Kan. 1998) ("According to the regulations implementing the FMLA,. . .the

19

twelve months 'need not be consecutive months'"); <u>Bell v. Prefix, Inc.</u>, 422 F. Supp.2d 810, 813 (E.D. Mich. 2006), *reversed on other grounds at* 2009 U.S. App. LEXIS 7006 (6th Cir. April 2, 2009) ("the plain language of the statute does not. . .support Defendant's contention that the 12 months must be continuous"); <u>Cox v. True N. Energy, LLC</u>, 524 F. Supp.2d 927, 936 (N.D. Ohio 2007) (finding the statutory language "clear and unambiguous" and noting that Congress could have used the words 'consecutive' or 'continuous' if it so intended"); <u>Thomas v. Mercy Mem'l Health Ctr., Inc.</u>, CA No. 07-22, 2007 U.S. Dist. LEXIS 64184, *8-*9, (E.D. Okla. Aug. 29, 2007) (finding the statute unambiguous and that its "plain language" did not support the conclusion that the months must be consecutive or continuous); and <u>O'Connor v. Busch's Inc.</u>, 492 F. Supp.2d 736, 743 (E.D. Mich. 2007) ("there is nothing in the Act that precludes Plaintiff from combining her separate periods of employment," even though the two periods were almost 20 years apart.)

Coincidentally, the only Court of Appeals to address this question published a persuasive and thoughtful analysis on December 18, 2006, shortly after DISH denied Ms. Bowyer leave and while the parties were still discussing her possible return to work, denial of unemployment compensation benefits, and refusal of the company's insurer to pay her medical bills. In <u>Rucker v. Lee Holding Co.</u>, 471 F.3d 6 (1st Cir. 2006), the court concluded that while the language of the statute itself may be ambiguous, read in their

entirety, the regulations make it clear that the Department of
Labor did not intend for non-consecutive months to count only if
the employee maintained a continuing relationship with the
employer.  The court held that "the complete separation of an
employee from his or her employer for a period of years, here five
years, does not prevent the employee from counting earlier periods
of employment toward satisfying the 12-month requirement."[11]  Id.,
471 F.3d at 12-13. Mr. Bermudez – assuming he was the person
ultimately responsible for Human Resources decisions for DISH at
the time – should have been aware of such case law which is
directly on point with Ms. Bowyer's situation.

All the cases cited in the previous two paragraphs rested on
the pre-January 2009 amendments to the regulations which Defendant
argues finally clarified the fact that non-consecutive periods of
employment should be considered in determining if the employee is
eligible for FMLA leave.  We find this argument unpersuasive.  The
italicized sentence in the quotation from Mitchell above, taken
from the 1995 version of the regulation is precisely the same

---

[11]  In arriving at these conclusions, the Court of Appeals
reversed the holding of the district court (see 419 F. Supp.2d 1 (D.
Me. 2006)), which had held Rucker could not combine the two periods of
employment, reasoning that the language of § 825.110 "clearly
contemplates that twelve non-consecutive months are adequate to
establish eligibility for an employee who maintains an ongoing
relationship with his employer, and whose attendance might be
interrupted by brief periods."  Id. at 3.  In the absence of other
case law or legislative history showing Congressional intent, the
district court concluded Congress could not have contemplated "such an
onerous requirement."  Id.

21

language as that currently used in 29 C.F.R. § 825.110(b).  The
2009 amendments do provide that with some exceptions not applicable
here, "employment periods prior to a break in service of seven
years or more need not be counted in determining whether the
employee has been employed by the employer for at least 12 months."
In short, it is more accurate to say that the 2009 amendments
clarified that the employer need not consider periods of employment
separated by more than seven years, but did not change the long-
standing policy that intermittent periods should be considered.  In
light of the established language of the regulations, we find it
was unreasonable for DISH to conclude Ms. Bowyer was not eligible
for FMLA leave because her second period of employment was only six
months.

     We also note that the ORACLE database on which the Human
Resources managers relied was inaccurate for FMLA purposes in that
as of October 31, 2006, it indicated Ms. Bowyer had worked only
eleven months, rather than 52 weeks, and failed to indicate the
number of hours she worked during her second period of employment.
Under both the FLSA and the FMLA, the employer has the burden of
establishing the number of hours the employee has worked.    Staunch
v. Cont'l Airlines, Inc., 511 F.3d 625, 629-630 (6th Cir. 2008);
Paul v. UPMC Health Sys., CA No. 06-1565, 2009 U.S. Dist. LEXIS
19277, *35-*36 (W.D. Pa. Mar. 10, 2009); see also Pirant v. United
States Postal Serv., CA No. 03-9383, 2006 U.S. Dist. LEXIS 89319,

*22 (N.D. Ill. Dec. 7, 2006) citing cases in which courts have held that *all* of the FMLA's numerical requirements which must be met in order for the statute to apply are to be strictly applied even in close situations. While the Court does not find that Defendant failed to keep such records, they have not been entered as evidence to date.[12] *See* <u>Shea</u>, 152 F.3d at 733 (even though employer showed its violation of the FLSA "resulted from good faith record-keeping errors," this was not enough to meet the burden of establishing its reasonable belief in the legality of the situation.)

In sum, we find that Defendant has not come forward with convincing evidence that it acted reasonably and in good faith when determining that Ms. Bowyer was not eligible for FMLA leave. Therefore, we will deny the motion for summary judgment on this issue, but without prejudice, pending the possible presentation of other, more persuasive, evidence at trial. An appropriate Order follows.

February  19 , 2010

William L. Standish
United States District Judge

-----

[12] At oral argument during the pre-trial conference, counsel for Defendant argued that the FMLA requires employment records to be retained only for the same period as that in the FLSA, i.e., three years from the end of employment (see 29 C.F.R. § 516.5) and that DISH therefore may not have even known about Ms. Bowyer's previous employment. However, under Pennsylvania law, payroll records must be retained four years (see 43 P.S. § 766(a)), which would have encompassed Ms. Bowyer's previous employment which ended in December 2002, less than four years before her employment was terminated on October 31, 2006. In either case, the ORACLE database did reflect Ms. Bowyer's previous period of employment since her "Total Service" was indicated as 11 months as compared to 6 months for "This Service."