IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA J. BOWYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 08-1496 |
| | ) |
| DISH NETWORK, LLC, and | ) |
| ECHOSPHERE, LLC, | ) |
| | ) |
| Defendants. | ) |

## OPINION

In this civil action, Plaintiff Pamela J. Bowyer ("Ms. Bowyer") asserts a claim against Defendants Dish Network, LLC and Echosphere, LLC ("DISH") for violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA.") DISH conceded liability, but moved for summary judgment on the questions of whether the violation was willful and whether Plaintiff was entitled to an award of liquidated damages. The Court denied Defendants' motion for summary judgment on these issues, but held that at trial, DISH would be permitted to present further evidence that it had acted reasonably and in good faith in making the determination that Ms. Bowyer was not eligible for FMLA leave. *See* Bowyer v. Dish Network, LLC, CA No. 08-1496, 2010 U.S. Dist. LEXIS 14680 (W.D. Pa. Feb. 19, 2010).

A bench trial was held on February 23, 2010. Following the

trial, the parties were directed to file proposed findings of fact and conclusions of law for the Court's consideration. The parties also deposed representatives of West Penn Allegheny Health System and a collection agency, CBCS, in connection with expenses incurred by Ms. Bowyer during her hospitalization in November 2006.

Having reviewed the evidence presented at trial, the deposition transcripts, and the arguments of the parties, the Court finds in favor of Plaintiff, Pamela J. Bowyer, and will award damages in the amount of $27,753.32, plus interest, attorneys fees, and costs in light of Defendants' willful violation of the FMLA. Defendant or its medical insurer shall also pay to West Penn Hospital any outstanding amount on Ms. Bowyer's obligation to the hospital.

**FINDINGS OF FACT**

1.   DISH is a corporation which provides satellite television service to residential and commercial customers.

2.   DISH employs more than 500 individuals in an industry affecting interstate commerce; Dish therefore concedes that it is subject to the provisions of the FMLA in question.

3.   Ms. Bowyer was employed by DISH as a customer service representative from July 22, 2002, through December 23, 2002, when she resigned.

4.   Ms. Bowyer was re-hired by DISH as a technical support representative on April 10, 2006, and worked at the company's

2

office located in McKeesport, Pennsylvania.

5.  Ms. Bowyer worked her regularly scheduled day on October 31, 2006, and was not scheduled to work again until Friday, November 3.

6.  On November 3, 2006, she called her supervisor, stating she would not be able to work because she was experiencing chest pains and needed to see a doctor as soon as possible.

7.  Ms. Bowyer was scheduled to work on November 4 and 5, 2006, but, contrary to DISH policy, she did not call to advise her employer that she would not be at work.

8.  By Monday, November 6, her condition had worsened and she was admitted to West Penn Hospital (part of the West Penn Allegheny Health System) for observation.

9.  On Monday, November 6, Ms. Bowyer called her supervisor, Hassanali Aliabadi, to tell him she was hospitalized and did not know when she would be released.

10. After receiving Ms. Bowyer's telephone call, Mr. Aliabadi contacted the DISH Human Resources office and asked them to begin the process of terminating Ms. Bowyer's employment.

11. Ray Bermudez, the DISH Human Resources Manager at the time, was the primary decision-maker concerning Ms. Bowyer's eligibility for FMLA leave.

12. The Human Resources office maintained an ORACLE computer database which contained employee information.

3

13. The database indicated that Ms. Bowyer's starting date with DISH was April 10, 2006, which was approximately six months and 20 days prior to her last working day.

14. The ORACLE database information on which Mr. Bermudez relied also showed Ms. Bowyer had worked for DISH a total of 11 months as of October 2006.

15. Based on that information, Mr. Bermudez concluded she was not eligible for FMLA leave because she had not been employed at least one year.

16. Mr. Bermudez did not take any steps to determine Ms. Bowyer's eligibility for FMLA leave other than reviewing the ORACLE database.

17. Mr. Bermudez did not question the accuracy of the ORACLE information, consult Ms. Bowyer's individual personnel file, discuss her potential eligibility for FMLA leave with other DISH managers, or take any other steps to clarify how long Ms. Bowyer had actually been employed by DISH.

18. Mr. Bermudez did not review any FMLA regulations or seek legal advice about the question of combining non-consecutive periods of employment when determining FMLA leave eligibility.

19. Even if the ORACLE database had correctly indicated that Ms. Bowyer had worked a total of twelve months during her two periods of employment with DISH, based on his knowledge of the FMLA at the time, Mr. Bermudez believed it would have been

"unreasonable" to consider Plaintiff's employment in 2002 because that period was separated by four years from her employment in 2006.

20. Mr. Bermudez did not sign any documents regarding Ms. Bowyer's termination.

21. None of the four DISH managers who approved her termination, Mr. Aliabadi, Kelly Fitterer, Jennifer Dietrick and a fourth individual whose signature was illegible testified at the bench trial, and there was no other evidence that any of them questioned Mr. Bermudez's decision.

22. Based on Mr. Bermudez's decision that Ms. Bowyer was not eligible for FMLA leave, DISH did not provide Plaintiff with the documents necessary to request such medical leave.

23. On November 10, 2006, while still in the hospital, Ms. Bowyer received a letter (the "termination letter") stating that her employment had been terminated effective October 31, 2006, because she was physically unable to perform her work duties.

24. Contrary to the DISH termination letter, Ms. Bowyer had worked on October 31, 2006, and had complied with DISH policy to call her supervisor to report her illness on November 3, 2006.

25. The earliest date on which Ms. Bowyer was "physically unable to perform her work duties" was November 3, 2006, not October 31, 2006; therefore, November 3 was the last date on which she was employed.

26.  As an employee benefit, DISH provided medical insurance to Ms. Bowyer; her portion of the premium for that insurance was paid through payroll deduction.

27.  DISH issued a paycheck to Ms. Bowyer on November 9, 2006, for the period ending November 3, 2006.

28.  The amount of $40.00 was deducted from the November 9, 2006 paycheck, representing Ms. Bowyer's portion of the medical insurance premium for the month of November 2006.

29.  According to DISH policy as stated in the termination letter, her medical insurance should have continued through November 30, 2006, the last day of the last month in which she was employed.

30.  West Penn Hospital initially accepted her employer's medical insurance for expenses related to her hospitalization between November 6 through 10, 2006, but later informed Ms. Bowyer that insurance coverage had been rejected.

31.  Ms. Bowyer was not aware until she received a statement from West Penn Hospital that her medical insurance had been cancelled as of October 31, 2006, despite the deduction made from her last paycheck for coverage in November.

32.  When Ms. Bowyer contacted DISH about this problem, unidentified DISH employee(s) at first denied that she had paid her portion of the premium for November.

33.  When presented with a copy of her final paystub showing the

deduction, DISH refunded the $40.00 premium payment in March 2007.

34. The original amount of the medical bill from West Penn Hospital was $22,347, but was decreased not later than March 14, 2007, to $11,096.50, based in part on Ms. Bowyer's unemployed status.

35. According to the deposition testimony of Mike Richards, a collection manager with CBCS, a collection agency hired by West Penn Hospital to attempt to collect the outstanding payment for services provided to Ms. Bowyer, the West Penn Hospital invoice remained unpaid as of March 4, 2010.

36. Mr. Richards also testified that the debt has not been forgiven by West Penn Hospital and that CBCS is still attempting to collect this unpaid bill.

37. According to the deposition testimony of Tricia Mushinsky, Manager of the West Penn Allegheny Health System Patient Financial Services Area, no payment had been made on the account as of March 17, 2010.

38. Ms. Bowyer was released to work by her physicians as of November 21, 2006.

39. In the termination letter, DISH advised Ms. Bowyer that she would be considered for re-employment in the future if she chose to reapply.

40. Two documents associated with Ms. Bowyer's termination from

DISH, the Employee Worksheet and the Termination/ Employment Survey, indicate that Ms. Bowyer was eligible for re-hire.

41. When she was allowed to return to work, Ms. Bowyer contacted DISH seeking re-employment but was told she was ineligible.

42. Ms. Bowyer never formally applied for re-employment at DISH after her termination although positions as customer service and technical support representative were available at the time.

43. Ms. Bowyer applied for unemployment benefits which were initially denied by the Bureau of Unemployment Compensation ("the Bureau") because the Bureau was told by DISH employee(s) that Ms. Bowyer was eligible to be rehired.

44. Ms. Bowyer could not actively seek a job through the Bureau's programs immediately after she was released to return to work because the Bureau determined "she had a job," that is, she was eligible to be rehired at DISH.

45. The question of eligibility for unemployment compensation was not resolved until January 8, 2007, when Ms. Bowyer was awarded benefits.

46. As required by the Bureau, Ms. Bowyer attended career training classes every week, utilized the Bureau's job search services, took a civil service test, and applied for jobs.

47. Defendant's vocational expert, James Rossi, testified that:
    a. Ms. Bowyer's vocational profile showed she had previously

worked as a medical lab technician, data entry clerk, sanitation and production worker, food preparation and serving worker, supervisor of food preparation and serving workers, group leader, after-school program worker, and customer service representative.

b.  Based on his review of classified advertisements in 14 issues of the Pittsburgh Post-Gazette newspaper for the period November 2006 through May 2007, there were at least 52 advertised positions for someone with Ms. Bowyer's skills.

48.  Ms. Bowyer failed to produce any written evidence to support her claim that she actively sought employment during the period November 21, 2006, through March 31, 2007.

49.  Ms. Bowyer's paper files pertaining to her job search efforts during this period were destroyed when her house was burglarized sometime after June 2007 and she deleted her computer records concerning unsuccessful applications.

50.  Ms. Bowyer began attending truck driving school in mid-April 2007 because she thought she would like that career best of all her options.

51.  Truck driving school required her to attend classes full time (Monday through Friday, 9 a.m. to 6 p.m.) for approximately six weeks.

52.  Ms. Bowyer continued to receive unemployment benefits while

attending school.

53. Ms. Bowyer completed driving school on approximately May 31, 2007, and was hired as a truck driver by U.S. Express in June 2007[1] at an hourly salary higher than that she would have earned had she continued to be employed by DISH.

54. Jonathan Moon, the current Human Resources Manager for DISH, testified that DISH had announced it would close its customer service facility in McKeesport as of March 5, 2010.

55. Mr. Moon testified that no employees at the McKeesport facility would be automatically transferred to other DISH facilities.

56. Mr. Moon further testified that other positions equivalent to technical support representative would not be available in the Pittsburgh area.

57. During her two periods of employment with DISH, July 22 through December 23, 2002, and April 10 through November 3, 2006, Ms. Bowyer worked a total of 52 weeks.

58. During her second period of employment at DISH, Ms. Bowyer earned a total of $14,816.30, an average of $505.92 per week.

59. The termination letter advised Ms. Bowyer that she was eligible for continued medical insurance coverage under COBRA provisions.

---

[1]   Neither party submitted concrete evidence to support these dates but they appear to agree that June 1, 2007, was the date by which Ms. Bowyer was employed by U.S. Express.  The Court has therefore accepted this apparent stipulation.

60. Since an insurance premium was deducted from Ms. Bowyer's last paycheck for the month of November 2006, Ms. Bowyer reasonably believed she had insurance coverage for that month.

61. Even if she had understood at that time that her coverage did not continue through the end of November, Ms. Bowyer had insufficient income to continue COBRA coverage until she was awarded unemployment compensation benefits in January 2007.

**CONCLUSIONS OF LAW**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Venue is properly laid in this District in that some or all of the violations of Plaintiff's federal statutory rights occurred during and after her employment with Defendants in this District.  28 U.S.C. § 1391(b)(2).

3. Defendant has stipulated to liability for violation of the FMLA and thus, the only issue before the Court is the amount of damages to which Ms. Bowyer is entitled for that violation.

4. The FMLA section on damages provides as follows:

> (1) Liability. Any employer who violates section 105 [29 USCS § 2615] shall be liable to any eligible employee affected-
>
> (A) for damages equal to-
>
> (I) the amount of-
>
> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation;
> . . . .
> (ii) the interest on the amount described in clause (I) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (I) and the interest described in clause (ii), except that if an employer who has violated section 105 [29 USCS § 2615] proves to the satisfaction of the court that the act or omission which violated section 105 [29 USCS § 2615] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 105 [29 USCS § 2615], such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (I) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

. . . .

(3) Fees and costs. The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

29 U.S.C. § 2617(a)(1).

5. Under the FMLA, an eligible employee is entitled to a total of 12 work-weeks of leave during any 12-month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

6. Except in circumstances not relevant herein, such leave "may consist of unpaid leave." 29 U.S.C. § 2612(c).

7. In the absence of any evidence that Ms. Bowyer would have been entitled to paid leave, the Court concludes that had she been granted FMLA leave, such leave would have been unpaid.

8. Consequently, Plaintiff is not entitled to back pay for the

12

period November 4 through November 20, 2006, that is, the period between the first day on which she was scheduled to work after her termination and the last day before she was released by her physicians to return to work.

9. As a result of Defendant's violation of the FMLA, Ms. Bowyer was without income for the period November 21, 2006, the date on which she was released by her physicians to return to work, through May 31, 2007, the last day prior to Plaintiff's employment as a truck driver.

10. An unlawfully discharged employee has a duty to mitigate her damages by seeking work. Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982).

11. In order to successfully limit a plaintiff's back pay award, the defendant must show that the plaintiff did not mitigate her damages. Ford Motor Co., 458 U.S. at 232; Carden v. Westinghouse Electric Corp., 850 F.2d 996, 1004-1005 (3d Cir. 1988).

12. To satisfy its burden with regard to mitigation of damages, the defendant must show that (1) "suitably equivalent" employment was available, and (2) the plaintiff failed to exercise "reasonable diligence" to obtain employment. Tai Van Le v. Univ. of Pa., 321 F.3d 403, 407 (3d Cir. 2003).

13. However, a plaintiff "need not go into another line of work, accept a demotion, or take a demeaning position." Ford Motor

<u>Co.</u>, 458 U.S. at 231.

14. Whether a plaintiff has exercised reasonable diligence in pursuing other positions and whether those positions were equivalent in terms of benefits, pay and other terms and conditions of employment are questions of fact. *See* <u>Suggs v. ServiceMaster Educ. Food Mgt.</u>, 72 F.3d 1228, 1233 (6th Cir. 1996); <u>Parker v. Hahnemann Univ. Hosp.</u>, 234 F. Supp.2d 478, 489 (D. N.J. 2002).

15. Defendant produced evidence, through Mr. Rossi's testimony, that there were at least 52 jobs available during the period in question suitable for someone with Ms. Bowyer's qualifications, thus satisfying the first prong of the test set out in <u>Tai Van Le</u>.

16. However, Defendant failed to produce evidence to overcome Ms. Bowyer's testimony that she had worked diligently with the Bureau of Unemployment Compensation in an effort to find suitable work during the period November 21, 2006, through mid-April 2007.

17. Although her job search was unsuccessful and may not have been as thorough as Defendant contends it should have been, reasonable effort is all that is required, not ultimate success. *See* <u>Dailey v. Societe Generale</u>, 108 F.3d 451, 456 (2d Cir. 1997).

18. Ms. Bowyer is therefore entitled to back pay beginning

14

November 21, 2006, at least through April 15, 2007, the approximate date on which she entered truck-driving school.

19. Courts have concluded that in some cases, an employee who removes herself from the job market to undertake full-time education or training is not eligible for back pay for that time. *See*, e.g., <u>Taylor v. Safeway Stores, Inc.</u>, 524 F.2d 263, 268 (10th Cir. 1975), *o'ruled on other grounds by* <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680 (1983).

20. "The central question a court must consider when deciding whether a student-claimant has mitigated her damages is whether an individual's furtherance of her education is inconsistent with her responsibility to use reasonable diligence in finding other suitable employment." <u>Dailey</u>, 108 F.3d at 456-457 (internal quotation marks omitted).

21. "There are several cases. . .which hold that one who chooses to attend school after diligent efforts to find work have proven to be unsuccessful, or who continues to search for work while enrolled in school, satisfies the obligation to mitigate." <u>Miller v. AT&T</u>, 83 F. Supp.2d 700, 707 (S.D. W.Va. 2000), *citing* <u>Brady v. Thurston Motor Lines, Inc.</u>, 753 F.2d 1269, 1275-76 (4th Cir. 1985); <u>Dailey v. Societe Generale</u>, *supra*; <u>Smith v. American Service Co.</u>, 796 F.2d 1430, 1432 (11th Cir. 1986); and <u>Hanna v. American Motors Corp.</u>, 724 F.2d 1300, 1307-09 (7th Cir. 1984).

22. A plaintiff who decides to return to school "when diligent efforts to find work prove fruitless," has satisfied the duty to mitigate damages.  <u>Dailey</u>, 108 F.3d at 457.

23. Because Ms. Bowyer's decision to enter trucking school occurred after four months of searching for a new position, the Court concludes that doing so did not end her entitlement to back pay for the period April 15 through May 31, 2007.

24. The period from November 21, 2006, through May 31, 2007, is equal to twenty-seven weeks and three days.

25. At the average weekly wage Ms. Bowyer was earning as of her termination, Plaintiff would have earned $13,876.66 for that period.

26. Based on evidence presented at the trial, DISH is liable to Ms. Bowyer in the amount of $13,876.66 for the period November 21, 2006, through May 31, 2007.

27. As the Court ruled at the trial, Ms. Bowyer is not entitled to back pay after she was employed as a truck driver beginning June 1, 2007, nor to front pay.

28. The FMLA requires an employer to maintain an employee's "group health plan" coverage during FMLA leave as if the employee had continued work instead of taking leave.   28 U.S.C. § 2614(c)(1).

29. Ms. Bowyer's medical insurance coverage was pre-maturely terminated in that the first day on which she was unable to

perform her work duties (the stated reason for her termination) was November 3, 2006, not October 31, 2006.

30. Under the FMLA, Ms. Bowyer is entitled to recover damages sustained because of the termination of her health insurance benefits. Sherman v. AI/FOCS, Inc., 113 F. Supp.2d 65, 76 (D. Mass. 2000).

31. Had DISH maintained Plaintiff's medical insurance through November 30, 2006, West Penn Hospital would have initially billed DISH or its health insurance company for the expenses associated with her hospitalization rather than Ms. Bowyer.

32. Neither DISH nor its insurer has paid the outstanding invoice for services from West Penn Hospital.

33. Despite efforts by West Penn Hospital and the collection agency CBCS to collect the outstanding amount, Ms. Bowyer has not paid any portion of the outstanding invoice nor suffered any other damages as a result of her failure to pay.

34. DISH or its insurer is liable to West Penn Hospital for the costs associated with Ms. Bowyer's hospitalization and, as more fully set forth in the Order of Court attached hereto, shall pay, either to West Penn Hospital or to the collection agency, any currently outstanding balance on the invoice for Ms. Bowyer's hospitalization.

35. The FMLA provides for mandatory liquidated damages unless the employer can come forward with plain and substantial evidence

17

to satisfy the good faith and reasonableness requirements of the statute. *See* 29 U.S.C. § 2617(a)(1)(A)(iii).

36. Even if the defendant does come forward with evidence of good faith and reasonableness, the court may, in its discretion, still allow liquidated damages. <u>Shea v. Galaxie Lumber & Constr. Co.</u>, 152 F.3d 729, 733 (7th Cir. 1998) ("[T]hat discretion must be exercised consistently with the strong presumption under the statute in favor of doubling.")

37. The Court concludes that the following actions contradict the assertion by DISH that it acted in good faith in connection with Ms. Bowyer's termination:

   a. November 3, 2006, was the first day Ms. Bowyer was unable to physically perform her duties, not October 31, 2006;

   b. This erroneous decision effectively deprived Ms. Bowyer of medical insurance coverage in November 2006 when DISH knew she had been hospitalized;

   c. DISH first denied Ms. Bowyer had paid her health insurance premium for November, then refunded her premium rather than extend her insurance coverage; and

   d. DISH disputed Ms. Bowyer's eligibility for unemployment benefits, informing the Bureau that she was able to return to work but concurrently told Ms. Bowyer she was not eligible.

38. At the time Ms. Bowyer's employment was terminated, the

federal regulations for purposes of determining if an employee were eligible for FMLA leave stated:

> *The 12 months an employee must have been employed by the employer need not be consecutive months.* If an employee is maintained on the payroll for any part of a week,. . .the week counts as a week of employment. For purposes of determining whether intermittent/casual employment qualifies as "at least 12 months," *52 weeks is deemed to be equal to 12 months.*

29 C.F.R. § 825.110(b) (1995) (emphasis added).

39. In light of this regulation, which was well-established in October-November 2006, Mr. Bermudez's reliance solely on the ORACLE database (that is, his failure to consult any other sources of information regarding her total period of employment with DISH), his personal view that consolidating two separate periods of employment would be "unreasonable" even if he had realized she had been employed 52 weeks, and his lack of familiarity with this provision were not reasonable.

40. DISH presented no other evidence of its good faith and reasonableness in the way Ms. Bowyer's termination was handled.

41. Plaintiff seeks liquidated damages in the amount of $24,973.16, an amount equal to the total of her unpaid back pay ($13,876.66) and the West Penn Hospital bill ($11,096.50.)

42. Inasmuch as DISH has been ordered to pay directly any outstanding medical bills, awarding liquidated damages to Ms.

Bowyer for the unpaid hospital bill and interest on that bill would constitute an unjust windfall. *See* <u>Tornberg v. Bus. Interlink Servs.</u>, 237 F. Supp.2d 778, 787-789 (E.D. Mich. 2002) (where employer had been able to negotiate with medical providers to accept a lesser amount than that billed to employee and directly paid the outstanding bills to the provider, an award of interest on the unpaid bills would constitute a windfall to the employee.)

43. The Court finds that in light of DISH's lack of good faith and reasonableness, Ms. Bowyer is entitled to liquidated damages in the amount of $13,876.66, representing the amount equal to her unpaid wages but not the amount of the outstanding medical bill.

44. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), DISH is liable to Ms. Bowyer for interest at "the prevailing rate" on the unpaid wages for the period November 21, 2006, through and including the date of payment, to be calculated by Plaintiff pursuant to 28 U.S.C. § 1961 and the Order of Court attached hereto.

45. The FMLA provides further "equitable relief as may be appropriate, including employment, reinstatement and promotion." 29 U.S.C. § 2617(a)(1)(B).

46. The FMLA does not entitle an employee to "employment other than any. . .position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C.

§ 2614(a)(3)(B).

47. Had Ms. Bowyer taken FMLA leave, it is highly likely she would have returned to the position of technical representative at the DISH McKeesport facility, the position she held as of November 3, 2006.

48. Pursuant to 29 C.F.R. § 825.216(a), "[a]n employee has no greater right to reinstatement. . .than if the employee had been continuously employed during the FMLA leave period;" moreover "[a]n employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."

49. Because all positions at the McKeesport facility were eliminated when the facility closed as of March 5, 2010, the Court concludes that reinstatement to the position of technical support representative is impossible.

50. Pursuant to 29 U.S.C. § 2617(a)(3), Ms. Bowyer is entitled to attorney's fees, reasonable expert witness fees and other costs of the action.

An appropriate Order follows.

April _20_, 2010

_William L. Standish_
William L. Standish
United States District Judge